## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| COLLEEN WITMER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| DR PEPPER SNAPPLE GROUP, INC., WAYNE R. SANDERS, LARRY D. YOUNG, DAVID E. ALEXANDER, ANTONIO CARRILLO, JOSÉ GUTIÈRREZ, PAMELA H. PATSLEY, RONALD G. ROGERS, DUNIA SHIVE, and M. ANNE SZOSTAK, | ) CLASS ACTION ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on January 29, 2018 (the "Proposed Transaction").

2. On January 29, 2018, Dr Pepper Snapple Group, Inc.'s ("DPSG" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Maple Parent Holdings Corp. and Salt Merger Sub, Inc., affiliates of Keurig Green Mountain, Inc. Pursuant to the terms of the Merger Agreement, shareholders of DPSG will receive a special cash dividend of $103.75 per share. Following the close of the merger, DPSG's shareholders will own only

13% of the combined company.

3. On March 8, 2018, defendants filed a preliminary proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement recommends that DPSG's shareholders vote in favor of proposals to approve, among other things, the issuance of DPSG common stock as merger consideration pursuant to the Merger Agreement, and an amendment to the certificate of incorporation of DPSG to provide for an increase in authorized shares to permit issuance of a sufficient number of shares as merger consideration, and a change of DPSG's name to "Keurig Dr Pepper Inc."

5. However, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the

transactions and wrongs complained of herein occurred in this District.

**PARTIES**

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of DPSG common stock.

10. Defendant DPSG is a Delaware corporation and maintains its principal executive offices at 5301 Legacy Drive, Plano, Texas 75024. DPSG's common stock is traded on the NYSE under the ticker symbol "DPS."

11. Defendant Wayne R. Sanders ("Sanders") serves as Chairman of the Board of DPSG and has been a director of the Company since May 2008.

12. Defendant Larry D. Young ("Young") serves as President and Chief Executive Officer ("CEO") of DPSG.

13. Defendant David E. Alexander ("Alexander") has served as a director of DPSG since November 2011.

14. Defendant Antonio Carrillo ("Carrillo") has served as a director of DPSG since February 2015.

15. Defendant José Gutiérrez ("Gutiérrez") has served as a director of DPSG since September 2016.

16. Defendant Pamela H. Patsley ("Patsley") has served as a director of DPSG since April 2008.

17. Defendant Ronald G. Rogers ("Rogers") has served as a director of DPSG since May 2008.

18. Defendant Dunia Shive ("Shive") has served as a director of DPSG since November 2014.

19. Defendant M. Anne Szostak ("Szostak") has served as a director of DPSG since May 2008.

20. The defendants identified in paragraphs 11 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of DPSG (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of January 24, 2018, there were approximately 179,743,931 shares of DPSG common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would

create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. DPSG is a leading producer of flavored beverages in North America and the Caribbean.

29. The Company has seven of the top ten non-cola soft drinks, and nine of its ten leading brands are No. 1 or No. 2 in their flavor categories.

30. In addition to the Company's flagship Dr Pepper and Snapple brands, its portfolio includes 7UP, A&W, Bai, Canada Dry, Clamato, Crush, Hawaiian Punch, IBC, Mott's, Mr & Mrs T mixers, Peñafiel, Rose's, Schweppes, Squirt, and Sunkist soda.

31. On January 29, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement.

32. Pursuant to the terms of the Merger Agreement, shareholders of DPSG will receive a special cash dividend of $103.75 per share. Following the close of the Proposed Transactions, DPSG's shareholders will own only 13% of the combined company.

33. According to the January 29, 2018 press release announcing the Proposed

Transaction:

> Dr Pepper Snapple Group, Inc. ("Dr Pepper Snapple") (NYSE: DPS) and Keurig Green Mountain, Inc. ("Keurig") today announced that the companies have entered into a definitive merger agreement to create Keurig Dr Pepper ("KDP"), a new beverage company of scale with a portfolio of iconic consumer brands and unrivaled distribution capability to reach virtually every point-of-sale in North America. Under the terms of the agreement, which has been unanimously approved by the Dr Pepper Snapple Board of Directors, Dr Pepper Snapple shareholders will receive $103.75 per share in a special cash dividend and retain 13% of the combined company.
>
> KDP will have pro forma combined 2017 annual revenues of approximately $11 billion. This combination of two iconic beverage companies joins together beloved brands Dr Pepper, 7UP, Snapple, A&W, Mott's and Sunkist with leading coffee brand Green Mountain Coffee Roasters and the innovative Keurig singleserve coffee system, as well as more than 75 owned, licensed and partner brands in the Keurig system. . . .
>
> KDP targets realizing $600 million in synergies on an annualized basis by 2021. Dr Pepper Snapple expects to pay its first quarter ordinary course dividend of $0.58 per share. At the close of the transaction, the company expects to deliver an annual dividend of $0.60 per share.
>
> The company will deliver strong cash flow generation and accelerate its deleveraging, with a target Net Debt/EBITDA of below 3.0x within two to three years after closing. KDP anticipates total net debt at closing to be approximately $16.6 billion and it anticipates maintaining an investment grade rating. . . .
>
> Under the terms of the merger agreement, Dr Pepper Snapple shareholders will receive a special cash dividend of $103.75 per share and will retain their shares in Dr Pepper Snapple. Upon closing of the transaction, Keurig shareholders will hold 87% and Dr Pepper Snapple shareholders will hold 13% of the combined company.
>
> JAB Holding Company, a global investment firm with a proven track record of investing long-term capital in global consumer brands, and its partners, will together make an equity investment of $9 billion as part of the financing of the transaction. JAB will be investing equity capital from JAB Holding Company as well as through JAB Consumer Fund, an investment fund backed by a group of like-minded, long-term oriented investors. Both JAB Holding Company and JAB Consumer Fund are overseen by three senior partners: Peter Harf, Bart Becht and Olivier Goudet. Entities affiliated with BDT Capital Partners, a Chicago-based merchant bank that provides long-term private capital and advice to closely held companies, are also investing alongside JAB. Upon closing of the transaction, JAB will be the controlling shareholder. Mondelēz International, JAB's partner in

Keurig, will hold an approximately 13-14% stake in the combined company.

The balance of the transaction financing will be provided through financing debt commitments from JPMorgan Chase Bank, Bank of America Merrill Lynch and Goldman Sachs. The transaction is not subject to a financing condition and is expected to close in the second calendar quarter of 2018, subject to the approval of Dr Pepper Snapple shareholders and the satisfaction of customary closing conditions, including receipt of regulatory approvals.

Management and Governance

Bob Gamgort, current chief executive officer of Keurig, will serve as chief executive officer of the combined company and Ozan Dokmecioglu, current chief financial officer of Keurig, will serve as its chief financial officer. Dr Pepper Snapple President and CEO Larry Young intends to transition to a role on KDP's Board of Directors to help the new management team realize the full potential of the company. Bart Becht, of JAB, will serve as Chairman of the company's Board of Directors and Bob Gamgort will become an Executive Member of the Board. Four additional directors will be appointed by JAB, two directors will be appointed by Dr Pepper Snapple, including Mr. Young, two directors will be appointed by Mondelēz International, and two independent directors will be appointed.

Keurig and Dr Pepper Snapple will continue to operate out of their current locations and Bob Gamgort, CEO of the combined company, will be based in Burlington, Mass. The combined company will draw on the leadership teams of both companies, who will continue running their respective businesses.

### *The Proxy Statement Omits Material Information*

34.   On March 8, 2018, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

35.   The Proxy Statement recommends that DPSG's shareholders vote in favor of proposals to approve, among other things, the issuance of DPSG common stock as merger consideration pursuant to the Merger Agreement, and an amendment to the certificate of incorporation of DPSG to provide for an increase in authorized shares to permit issuance of a sufficient number of shares as merger consideration, and a change of DPSG's name to "Keurig Dr Pepper Inc."

36. However, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

37. The Proxy Statement omits material information regarding DPSG's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Credit Suisse.

38. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate EBITDA; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP metrics to the most comparable GAAP measures.

39. With respect to Credit Suisse's DPSG (Standalone) Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the calculated terminal values for DPSG; (ii) the inputs and assumptions underlying the range of next 12 months EBITDA multiples of 12.5x to 13.5x; (iii) the inputs and assumptions underlying the range of discount rates of 5.0% to 6.5%; and (iv) the cash flows resulting from the deferred amortization of tax assets and the deferred recognition of revenue during the calendar years ending December 31, 2023 through December 31, 2035.

40. With respect to Credit Suisse's DPSG Pro Forma Combined Company Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values for the pro forma combined company; (ii) the inputs and assumptions underlying the range of next 12 months EBITDA multiples of 12.00x to 13.25x; (iii) the inputs and assumptions underlying the range of discount rates of 6.0% to 8.0%; and (iv) the cash flows resulting from the deferred amortization of tax assets and the deferred recognition of revenue during the calendar years ending December 31, 2023 through December 31, 2035.

41. With respect to Credit Suisse's Selected Public Companies Analyses, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Credit Suisse in the analyses.

42. With respect to Credit Suisse's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Credit Suisse in the analysis.

43. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Board; DPSG's Reasons for the Merger; (iii) Opinion of DPSG's Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information Utilized by Our Board of Directors and Financial Advisor.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to DPSG's stockholders.

# COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and DPSG

46.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  DPSG is liable as the issuer of these statements.

48.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

49.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the proposals in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to vote in favor of the proposals in connection with the Proposed Transaction.

52.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and

Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of DPSG within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of DPSG and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to vote in favor of the proposals in connection with the Proposed Transaction. They were thus directly involved in the making of the Proxy

Statement.

58.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 27, 2018

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

**RM LAW**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305

**KENDALL LAW GROUP, PLLC**

By: */s/ Joe Kendall*
Joe Kendall (Texas Bar No. 11260700)
jkendall@kendalllawgroup.com
Jamie J. McKey (Texas Bar No. 24045262)
jmckey@kendalllawgroup.com
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

*Attorneys for Plaintiff*